## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DONALD J. POLKEY SR.**                    **CIVIL ACTION**

**VERSUS**                                  **NO.  05-5973**

**JIM ROGERS, WARDEN**                      **SECTION "B"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a  United States Magistrate Judge to conduct hearings,

including an evidentiary hearing if necessary, and to submit proposed findings and

recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as

applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the

entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u>

28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Donald J. Polkey Sr., is incarcerated in the C. Paul Phelps Correctional Center in DeQuincy, Louisiana.[2] On May 17, 2000, Polkey was charged by bill of information in Lafourche Parish with molestation of a juvenile.[3]  The charge was amended to aggravated incest on April 30, 2001.[4]  The Louisiana First Circuit Court of Appeal summarized the facts proven at trial as follows:

> The bill of information provides that on or about March 14, 2000, the defendant committed the crime of aggravated incest.  According to the testimony of the victim, the defendant's son, his father inserted his finger into the child's rectum while giving him a bath.  The defendant told the child not to tell his mother about the incident.  The victim was eight years age at the time of trial.  Upon receiving a report from the Office of Community Services concerning the incident, the police conducted an investigation into the incident.  The defendant was arrested and ultimately charged with aggravated incest.

State v. Polkey, 826 So.2d 1197 (La. App. 1st Cir. 2002) (Table); St. Rec. Vol. 2 of 2, First Circuit Opinion, p. 2, 2001-KA-2864, June 21, 2002.

---

[2]Rec. Doc. No. 1, Petition attached.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 5/17/00.

[4]Id.; St. Rec. Vol. 2 of 2, Transcript of Re-Arraignment and Status Conference, 4/30/01.

Polkey was tried before a judge without a jury on June 28, 2001.[5]  The court found

him guilty as charged.[6]  Based on the circumstances and Polkey's prior conviction for

sexual acts upon a juvenile, the state trial court sentenced him on July 11, 2001, to serve

the maximum sentence of 20 years at hard labor.[7]

On appeal, Polkey's appointed counsel argued that the sentence was excessive.[8]

Polkey reiterated this same claim in his pro se brief filed with the appellate court.[9]  The

Louisiana First Circuit found the claim meritless and affirmed the conviction and

sentence on June 21, 2002.[10]

The conviction became final 30 days later, Sunday, July 21, 2002, or the next

business day, Monday, July 22, 2002, because Polkey did not seek rehearing or file for

timely review in the Louisiana Supreme Court.[11]  Roberts v. Cockrell, 319 F.3d 690 (5th

Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the

---

[5]St. Rec. Vol. 2 of 2, Trial Transcript, 6/28/01.  Polkey waived his right to a jury trial at the status conference held April 30, 2001.   St. Rec. Vol. 2 of 2, Transcript of Re-Arraignment and Status Conference, 4/30/01.

[6]St. Rec. Vol. 2 of 2, Trial Transcript, p. 99, 6/28/01.

[7]St. Rec. Vol. 2 of 2, Sentencing Transcript, p. 4, 7/11/01.

[8]St. Rec. Vol. 2 of 2, Appeal Brief, 2001-KA-2864, 1/22/02.

[9]St. Rec. Vol. 2 of 2, Pro Se Appeal Brief, 2/7/02.

[10]State v. Polkey, 826 So.2d at 1197; St. Rec. Vol. 2 of 2, 1st Cir. Opinion, 2001-KA-2864, 6/21/02.

[11]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a), petitioner had 30 days from the issuance of the state appellate court's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

next available step in an appeal process); <u>McGee v. Cain</u>, 104 Fed. Appx. 989, 991 (5th Cir. 2004).

The State suggests that Polkey filed an application for writ of certiorari or review in the Louisiana Supreme Court on October 21, 2002.[12]  The state court record does not contain any indication that such a pleading was filed.  In addition, my staff contacted the office of the clerk of court for the Louisiana Supreme Court and confirmed that the court has no record of any such filing.

On May 27, 2003, Polkey filed an application for post-conviction relief in which he asserted three grounds for relief:[13] (1) Imposition of the maximum sentence constitutes an excessive sentence. (2) The State did not meet its burden of proof in finding petitioner guilty of the offense beyond a reasonable doubt. (3) The State erred when it amended the original bill of information, omitted language of the upgraded charge and added the statute at the bottom of the page.

The state trial court denied relief on the excessive sentence claim, finding it inappropriate for post-conviction review under La. Code Crim. P. art. 930.3 and <u>State ex rel. Melinie v. State</u>, 665 So.2d 1172 (La. 1996) and repetitive of the claim raised on

---

[12]Rec. Doc. No. 3, p.8.

[13]St. Rec. Vol. 2of 2, Application for Post Conviction Relief, 5/27/03.

appeal.[14]  The court determined that the two remaining claims should be barred from review pursuant to La. Code Crim. P. art. 930.4 because the claims had not been raised on appeal.  However, the court gave Polkey an opportunity to show cause for his failure to do so.

Polkey filed a reply on August 11, 2003, asserting that the claims were not raised on appeal because of the decisions of his appointed counsel.[15]  The State, at the direction of the trial court, filed a response "denying" his claims.[16]

The state court record provided by the respondent does not contain a ruling from the state trial court.  My staff has confirmed with the office of the clerk of court for the 17th Judicial District Court in Lafourche Parish that the original record also does not contain a final ruling from the state trial court on the application for post-conviction relief.  In addition, the clerk of the Louisiana First Circuit, through counsel for the respondent, has determined that Polkey did not attach a ruling from the trial court to either of his subsequent writ applications to that court.

---

[14]St. Rec. Vol. 2 of 2, Trial Court Order, 6/27/03.

[15]St. Rec. Vol. 2 of 2, Notice of Remand, 8/11/03.

[16]St. Rec. Vol. 2 of 2, Trial Court Order, 8/18/03; State's Answer to Petition for Post Conviction Relief, 10/2/03.

5

Nevertheless, Polkey sought further review of his claims in a writ application to the Louisiana First Circuit filed on October 31, 2003.[17]  The appellate court denied the writ application on February 20, 2004, on grounds that it sought post-conviction review without having first raised the claims in the state trial court.[18]

Polkey apparently filed a second writ application with the Louisiana First Circuit on March 11, 2004.[19]  Because the State failed to produce a copy of the writ application or the appellate records as ordered, I am unable to determine what claims were raised in this application.  The application was denied without reasons on April 2, 2004.[20]

Polkey filed a writ application in the Louisiana Supreme Court on June 1, 2004.[21] The State also failed to provide a copy of this writ application or the Louisiana Supreme Court's record.  Nevertheless, the writ application was denied without reasons on April 8, 2005.[22]

---

[17]The record does not contain a file-stamped copy of the application. The filing date was obtained by my staff from the office of the clerk of court for the Louisiana First Circuit. The state record contains a purported courtesy copy sent to the trial court by Polkey on November 4, 2003.  St. Rec. Vol. 2 of 2, 1st Cir. Writ Application, 2003-KW-2430, received 11/4/03.

[18]St. Rec. Vol. 2 of 2, 1st Cir. Order, 2003-KW-2430, 2/20/04.

[19]The record does not contain a copy of the application.  The filing date was obtained from the office of the clerk of court for the Louisiana First Circuit.

[20]St. Rec. Vol. 2 of 2, 1st Cir. Order, 2004-KW-0562, 4/2/04.

[21]St. Rec. Vol. 2 of 2, La. S. Ct. Letter, 2004-KH-1303, 6/1/04.

[22]St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2004-KH-1303, 4/8/05.

II.     FEDERAL HABEAS PETITION

On July 25, 2005, Polkey filed a petition for federal habeas corpus relief in the United States District Court for the Western District of Louisiana, which transferred the matter to this court.   The petition seeks relief on the following grounds:[23] (1) The evidence was insufficient to support the finding of guilt beyond a reasonable doubt. (2) Polkey was denied effective assistance of counsel because his lawyer failed to object to the defective bill of information.

The State filed an answer and supporting memorandum in opposition to Polkey's federal petition on January 5, 2006, arguing principally that the petition was not timely filed.

III.    STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996[24] and applies to habeas petitions filed after that date.   Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore

---

[23]Rec. Doc. No. 1, Petition attached.

[24]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Polkey's petition, which, for reasons discussed below, is deemed filed in this court on July 23, 2005.[25]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

My review of the state court record reflects that Polkey's federal petition was timely filed.  The respondent did not assert any other affirmative defense and the state court record provided to this court is not sufficient to conclude whether Polkey's claims are procedurally barred from review or whether the claims were exhausted in the state courts.  I will therefore proceed to address the merits.

For review of the merits of habeas corpus petitions, amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions

---

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court for the Western District of Louisiana filed Polkey's petition on July 25, 2005, when the filing fee was paid. However, Polkey signed the petition on July 23, 2005, which is the earliest date he could have submitted it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25).

IV.  INSUFFICIENT EVIDENCE

Polkey alleges that the evidence was not sufficient to support the verdict of guilty of aggravated incest.  A claim of insufficient evidence presents a mixed question of law and fact.  Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The well established federal standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. <u>Donahue v. Cain</u>, 231 F.3d 1000, 1004 (5th Cir. 2000); <u>Gilley v. Collins</u>, 968 F.2d 465, 467 (5th Cir. 1992); <u>Guzman v. Lensing</u>, 934 F.2d 80, 82 (5th Cir. 1991).

Polkey was charged and convicted of aggravated incest in violation of La. Rev. Stat. Ann. § 14:78.1. The trial court determined that Polkey was guilty of aggravated incest through the commission of a sexual battery upon his natural son by touching or penetrating his anus and that the fondling or touching was done to arouse his own sexual desires or gratification.[26] At the time, Louisiana defined aggravated incest in La. Rev. Stat. Ann. §14:78.1 in relevant part as follows:[27]

> A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection (B) with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
> B. The following are prohibited acts under this Section:

---

[26]St. Rec. Vol. 2 of 2, Trial Transcript, p. 96-97, 98-99, 6/28/01.

[27]The statute was amended in 2004 to provide that consent was not a defense and to remove several commas. Acts 2004, No. 648, § 1; Acts 2004, No. 676, § 1.

(1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

The following definition of sexual battery under La. Rev. Stat. Ann. § 14:43.1 is also relevant to the findings of the trial court in Polkey's case:

A.  Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:

(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or

(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.

Under Louisiana law, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.  State v. Bolden, 852 So.2d 1050, 1057 (La. App. 5th Cir. 2003) (citing State v. Hawkins, 740 So.2d 768, 769 (La. App. 5th Cir. 1999) and State v. Styles, 692 So.2d 1222, 1233 (La. App. 5th Cir. 1997).  In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is

sufficient support for a requisite factual finding.  Id. (citing State v. Ruffin, 836 So.2d 625, 630 (La. App. 5th Cir. 2002).

In this case, the victim was Polkey's six-year-old son.  The child was eight years old when he testified at trial.[28]  The child testified that Polkey stuck a finger into his rectum while giving him a bath.[29]  The boy testified that, after doing so, Polkey told him not to tell his mother what Polkey had done.[30]

The State also played an audio tape of Polkey's recorded inculpatory statement to the police.[31]  In that statement, Polkey told the detectives, Gary Tullis and Steve Tullis, that, while giving the child a bath, he stuck his finger up to the first knuckle into the child's rectum to illustrate to the child what sex was.[32]  Polkey denied being aroused at the time of the incident but testified that the incident shocked the boy.[33]  Polkey also stated that he was bothered by the fact that the boy often stuck his own finger into his own rectum.[34]  He also told the detectives that he told his wife and family about what he

---

[28]St. Rec. Vol. 2 of 2, Trial Transcript, p. 11, 6/28/01.

[29]Id., at p. 13.

[30]Id., at p. 14.

[31]Id., at p. 46, l. 22-23.

[32]St. Rec. Vol. 1 of 2, Transcript of Audio Tape Statement, p. 3-4, 4/18/00.

[33]Id., at p. 4.

[34]Id., at p. 3-4.

had done because he was worried about why the boy had the habit of doing that to himself.[35]

Polkey also testified at trial that his son had accused him of having sex with the boy about a month before the bathtub incident.[36] The boy accused Polkey of laying down on top of him.[37]  Polkey stated that the only time he was ever "over" his son was when they wrestled on the floor.[38]  Polkey testified that he tried to explain to the boy that sticking his finger in his rectum was nasty and was more like sex than when Polkey pinned him down on the floor.[39]  Polkey also testified that he pointed at his son's butt four times to illustrate and the child was not paying attention.[40]  He testified that, while trying to get the child's attention, his middle finger accidently went into the child's rectum.[41]

---

[35]Id., at p. 5-6

[36]Id., at p. 65-66.

[37]Id., at p. 66.

[38]Id.

[39]Id., at p. 66-67.

[40]Id., at p. 63.

[41]Id., at p. 63, 68.

At trial, Polkey's wife, the mother of the victim, denied that Polkey told her what he had done to their son.[42]  She also denied that her son ever put his own finger into his own rectum.[43]

The testimony at trial and Polkey's own admissions reflect that he did in fact stick his finger into his son's rectum to illustrate or demonstrate sex.  The child testified that Polkey told him not to tell his mother about the incident.  This was supported by Mrs. Polkey's testimony that her husband never told her about the incident.  Both the child and his mother also denied that the child ever stuck his own finger into his own rectum. Citing these facts, the trial court made a credibility finding:  it did not find Polkey to be credible and chose not to believe that the event was accidental or that Polkey was simply trying to explain anything sexual to his six-year-old son.

The evidence at trial therefore established that Polkey stuck his finger in his son's anus, which constituted a sexual battery, and also that he committed the lewd touching for his own sexual gratification.  The evidence was sufficient to support the guilty verdict for aggravated incest.

The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedence.  Polkey is not entitled to relief on this claim.

---

[42]St. Rec. Vol. 2 of 2, Trial Transcript, pp. 18, 47, 6/28/01.

[43]Id., at p. 47.

V.    <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Polkey alleges that his counsel was ineffective for failing to object to the improper form of the amended bill of information. Polkey alleges that the State was required to put the amended charge in writing, but did not do so.

The state court record as presented to this Court does not reflect when or if Polkey raised an ineffective assistance of counsel claim in the state courts. He did, however, challenge the form of the indictment in his application for post-conviction relief filed in the state trial court, for which no ruling appears in the record.

The issue of effective assistance of counsel is a mixed question of law and fact. <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel.

In <u>Strickland</u>, the court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

16

In deciding ineffective assistance of counsel claims, the court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of

17

hindsight." Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1854 (2002) (citing Strickland, 466 U.S. at 689, 690).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Strickland, 466 U.S. at 689.

Ordinarily, this court would not necessarily consider the sufficiency of the form of a bill of information on habeas corpus review.  The United States Court of Appeals for the Fifth Circuit has declined to review claims of insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction . . . [and] this can be determined only by looking to the law of the state where the indictment was issued." Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985) (citation and quotations omitted) (emphasis added); Murphy v. Beto, 416 F.2d 98, 100 (5th Cir. 1969).  Resolution of such an issue on federal habeas review is precluded "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction

over the case. ..."  Id. (quotation and citation omitted); Murphy, 416 F.2d at 100 ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.")

However, in order to determine whether Polkey's counsel was deficient in failing to object to the form of the bill of information, I will examine whether the bill of information was proper in form and content.

The United States Supreme Court has held that the charging instrument in a criminal case is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense and affords him protection against double jeopardy.  United States v. Debrow, 346 U.S. 374 (1953).  In this case, Polkey was first charged by bill of information on May 17, 2000, with molestation of a juvenile.[44]  The original bill of information read as follows:

> WALTER "BUTCH" NAQUIN, JR., District Attorney of the Seventeenth Judicial District fo the State of Louisiana, who, in the name of and by the authority of the said State, prosecutes in its behalf, in the Parish of Lafourche, and informs the said court that one DONALD J. POLKEY, 2630 A South Bayou Drive, Golden Meadow, LA, on or about the 14th day of March in the year of our Lord, Two Thousand in the Parish of Lafourche, and within the jurisdiction of the Seventeenth Judicial District Court in and for the Parish of Lafourche, did commit molestation of a juvenile in that being over the age of seventeen he did commit a lewd or lascivious act upon the person of in the presence of a child under the age of seventeen, where there is an age difference of greater than two years between them, with the intention of arousing or gratifying the sexual desires of either of them, by the use of force, violence, duress, menace,

---

[44]St. Rec. Vol. 1 of 2, Bill of Information, 5/17/00.

psychological intimidation, threat of great bodily harm, or by the use of influence by virtue or a position of control or supervision over the juvenile, in violation of R.S. 14:81.2(C). contrary to form of the statute of the State of Louisiana, and against the peace and dignity of the same.

At a status conference held in court on April 30, 2001, the prosecutor announced that he amended the bill of information to charge Polkey with aggravated incest.[45]  The bill of information reflects that the prosecutor crossed through that portion of the bill of information stating the charge and its definition from the phrase "did commit" to "R.S. 14:81.2(C)."[46]  In its place, the prosecutor wrote "did commit the crime of Aggravated Incest in violation of La. R.S. 14:78.1."[47]  The handwritten change appears to have been initialed by the prosecutor, Camille A. Morvant.  At the same hearing, Polkey entered a plea of not guilty to the charge as amended.[48]

Pursuant to La. Code Crim. P. art. 382, a crime not punishable by death or life imprisonment may be charged by either an indictment or bill of information.  Under Louisiana law, the bill of information is a written accusation made and signed by the district attorney and filed in the court or with the office of the clerk in the appropriate jurisdiction.  La. Code Crim. P. art. 384.

---

[45]St. Rec. Vol. 2 of 2, Transcript of Re-arraignment and Status Conference, 4/30/01.

[46]St. Rec. Vol. 1 of 2, Bill of Information, 5/17/00.

[47]Id.

[48]St. Rec. Vol. 2 of 2, Transcript of Re-arraignment and Status Conference, 4/30/01.

Because neither molestation of a juvenile nor aggravated incest are punishable by death or life imprisonment, the prosecution against Polkey was appropriately initiated by bill of information.  <u>State v. Carcamo</u>, 860 So.2d 220, 222 (La. App. 5th Cir. 2003).

Louisiana law also provides that the bill of information shall be substantially in the following form pursuant to La. Code Crim. P. art 463:

> The information may be in substantially the following form:
>      In the (Here state the named of the court.) on the ___ day of _____, 19__.  State of Louisiana v. A.B. (Here state the named or description of the accused).
>      X.Y., District Attorney for the Parish of ___, charges that A.B. (Here state the named or description of the accused.) committed the offense of _____, in that (Here set forth the offense and transaction according to the rules stated in this Title.  The particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars.) contrary to the law of the state of Louisiana and against the peace and dignity of the same.

The amended bill of information is in substantial compliance with the format provided in La. Code Crim. P. art. 463.  The bill charges that Polkey committed the crime of aggravated incest and includes the statutory reference to La. Rev. Stat. Ann. § 14:78.1.  The original bill was signed by the district attorney and the change was initialed by the prosecutor assigned to the case.

The bill also contains the date of the alleged offense, the other statutory language and the required reference to the proper jurisdiction.  The statute does not require that any further detail be given, but instead only allows that it "may be added" for the purpose of avoiding a bill of particulars from the defendant.

21

Thus, the record reflects that the prosecutor did in fact put the amended charge in writing as evidenced by the handwritten change to the original bill of information.  In addition, both the original bill of information and the bill as amended contain the requisite information and are in substantial compliance with Louisiana law.  From the amended bill of information, Polkey was advised of his statutory violation and the date of the alleged offense in a sufficient manner to protect him from possible double jeopardy as required by the United States Supreme Court precedent.  Accord Debrow, 346 U.S. at 374.

Since the record establishes that the amended bill of information was sufficient in form and content, the record fails to demonstrate a basis for Polkey's counsel to have entered an objection to the amended bill of information.  Thus, counsel was not deficient in his performance or ineffective in any way with respect to his failure to challenge the amended bill of information.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

The failure to grant relief on this claim is not contrary to or an unreasonable application of Supreme Court precedent.  Polkey is not entitled to relief on this claim.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Donald J. Polkey, Sr., for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __20th__ day of March, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE